**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

GERMAN DE ARMAS,

    Petitioner,

v.　　　　　　　　　　　　　　　　　　　CASE NO:  8:07-CV-694-T-30MAP
　　　　　　　　　　　　　　　　　　　　Crim. Case No: 8:04-CR-562-T-30MAP

UNITED STATES OF AMERICA,

    Respondent.
_____/

## **ORDER**

THIS CAUSE comes before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. §2255 (Dkt. #1) filed on April 23, 2007, the Government's Response thereto (Dkt. #4), and the Petitioners Reply thereto (Dkt. #6).

### **Background**

Petitioner, GERMAN DE ARMAS (hereinafter referred to as "De Armas" or "Petitioner"), was arrested on November 10th of 2004, with others in the Caribbean Sea in a forty-foot "go-fast" vessel. Petitioner was charged by indictment with: (1) possession with intent to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the of the United States, in violation of Title 46 Appendix, United States Code, Sections 1903 (a) and (g); Title 18, United States Code, Section 2; and Title 21, United States Code, Section 960(b)(1)(B)(ii), and (2) conspiracy to possess with intent to distribute five

kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of Title 46 Appendix, United States Code, Sections 1903(a), (g), and (j); and Title 21, United States Code, Section 960(b)(1)(B)(ii). Petitioner pled guilty to both counts.

At sentencing, De Armas admitted to the factual accuracy of the Presentence Report. The facts included:

> 9. On November 10, 2004, German De Armas, Benavides Berrios-Vargas, Diego Emilio Moreno-Gomez, Jorge Luis Blanco-Pulgarin, and Rudi Pena-Gomez, all foreign nationals, were traveling in the Caribbean Sea in a forty foot go-fast vessel loaded with numerous bales of cocaine. The vessel exhibited no registration numbers or country of origin flag. Maritime control aircraft spotted the go-fast vessel and alerted a United States Coast Guard helicopter, which dispatched from the Coast Guard Cutter *Gallatin*. The *Gallatin* and other vessels then altered course to intercept the go-fast. Upon observing the Coast Guard helicopter, the go-fast vessel began operating evasively, and the crew members began to jettison its cocaine cargo overboard.
>
> 10. After the "go-fast" crew ignored orders to halt, the helicopter used disabling fire to stop the vessel. While their vessel was dead in the water, the five go-fast crew members continued throwing the cocaine into the ocean. The Coast Guard boarded the go-fast vessel and identified the five crew members. German De Armas claimed that he was the vessel's Captain and that the vessel was Colombian. The crew falsely reported that they were heading to Nicaragua.
>
> 11. The Coast Guard boarding crew recovered sixty-two bales of cocaine weighing approximately 1,550 kilograms from the boat and the ocean. The boarding crew also found $13,280 in United States currency; 541,126 Colombian pesos; radio equipment; and Global Positioning System equipment on board the boat.[1]

---

[1] Presentence Investigation Report for German De Armas, United States District Court for the Middle District of Florida Tampa Division, Case #8:07-cv-694-T-30MAP, Dkt. # S-1.

When the Court asked Petitioner if he objected to the probation officer's application of the sentencing guidelines, Petitioner acknowledged that the circuit precedent was to the contrary[2], but asserted that the sentence should be imposed based on the drug quantity set forth in the indictment. Petitioner acknowledged that his objection was probably improper. The Court rejected this argument and sentenced Petitioner to a term of 135 months.

Petitioner appealed his sentence to the Eleventh Circuit Court of Appeal which affirmed this Court's disposition of the case on May 8, 2006.[3]

## Discussion

Petitioner now brings this §2255 motion to set aside his sentence, raising several of the same issues that he asserted on appeal in the Eleventh Circuit.  In particular, Petitioner asserts his "attorney coerce defendant into a plea, Plea guilty without a Plea Agreement, No Individualization of Drugs, No Minimal Participation, Mule, Ineffective Assistance of Counsel, Alien as Deportable Status, the Right under the Fifth and Sixth Amendments to demand a jury determination of facts." [4]

As to the claim that Petitioner's attorney coerced him into a plea agreement, the transcript of the guilty plea hearing directly contradicts this  allegation. An interpreter was

---

[2]U.S. v. Duncan, 400 F.3d 1297 (C.A.11 (Fla.), 2005).

[3]Cert. denied, De Armas v. United States, 127 S.Ct. 308, 166 L.Ed.2d 232, 75 USLW 3174.

[4]German De Armas vs. United States of America, Memorandum In Support of Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. §2255. (Dkt. #1).

used during Petitioner's plea hearing.[5] When asked if anyone had made any promises to him in order to get him to plead guilty, Petitioner answered no. Asked if he was forced or threatened in any way to get him to plead guilty, Petitioner answered no. Finally, Petitioner acknowledged that his decision was made after discussing it with his lawyer. Petitioner further confirmed that he understood the sentencing process and that a judge would determine his sentence.[6]

Addressing the ineffective assistance of counsel claims, the only grounds to vacate a sentence is if the counsel's performance fell below an objective standard of reasonable professional assistance and whether the defendant was prejudiced by the deficient performance.[7] The burden is on the Petitioner to prove counsel's performance was unreasonable.[8] Petitioner claims his counsel: (1) failed to make a plea agreement where Petitioner could get all the benefits of a plea agreement, (2) allowed Petitioner to remain ignorant of the rights contained in a plea agreement, (3) failed to negotiate a plea agreement and receive the benefits of a plea agreement, (4) did not advise petitioner, (5) provided poor advice misleading defendant and creating the circumstance where no plea could have been voluntary, (6) failed to inform Petitioner that he had an express 6th amendment right to

---

[5] Because Petitioner's native language is Spanish.

[6] United States vs. German De Armas, Transcript of Guilty Plea Hearing, Dkt. #8:04-Cr-562-T-30MAP (Dec. 22, 2004).

[7] Strickland v. Washington, 466 U.S. 668, 688 (1984).

[8] Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000).

require the government to prove each and every factor that would affect the severity of Petitioner's sentence, and (7) extorted his plea by fear.

Contrary to Petitioner's conclusory assertions, the record shows the Magistrate explained the consequences of accepting a plea of guilty and adequately addressed the issues about which the Petitioner now complains.[9] And, De Armas has failed to state how he was prejudiced by not having a plea agreement . It is important to note that not filing a plea agreement can be a sound trial strategy in order to preserve issues for appeal. This directly contradicts Petitioner's assertion of ineffective assistance of counsel.

As to a trial by jury, the Magistrate explained: "gentlemen, all of you have the right to take your case to trial...you have a right to present a defense, to call witnesses...But when you plead guilty, there will be no trial. You will be giving up all the rights associated with the right to trial. The only matter to decide will be the sentence you are to receive. Do each of you understand your right to trial?" Petitioner answered "yes." [10]

Petitioner also states in his motion that counsel never asserted that Petitioner was entitled to a downward departure and that counsel never disagreed with the Presentence Investigation Report. This allegation is factually incorrect, Petitioner's counsel did object to the guideline calculation based on *Booker* argument.[11] Further, Petitioner has not identified

---

[9]United States vs. German De Armas, Transcript of Guilty Plea Hearing, Dkt. #8:04-cr-562-T-30MAP (Dec. 22, 2004).

[10]United States vs. German De Armas, Transcript of Guilty Plea Hearing, Dkt. #8:04-cr-562-T-30MAP (Dec. 22, 2004).

[11]United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621(2005).

any aspect of the Presentence Report to which his attorney could have reasonably objected nor pointed to any prejudice.

Also, Petitioner wishes to re-argue the issues surrounding the MDLEA and the constitutionality of 1903(f). A court will not reconsider an issue already decided on direct appeal unless there are changed circumstances of fact or law.[12] Petitioner raises the same argument in this Motion that he raised in his appellate brief, with no new issues of fact or law.

Concerning the issues of individualization of drugs, mule, and minimal participation, the Eleventh Circuit Court of Appeals addressed these issues and determined that there was no error. On appeal De Armas argued: "that his sentence was unreasonable in light of the § 3553(a) factors and the Supreme Court's decision in Booker." The Eleventh Circuit stated: "As for his claim that the district court did not adequately consider all of the § 3553(a) factors, we recently held that 'nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors.'" [13]

Now, De Armas asks for a sentence below the advisory guidelines range and offers the following factors as support: (1) he has no criminal history; (2) the sentence that he suggested, 108 months' imprisonment, adequately would have reflected the seriousness of

---

[12] United States v. Nyhuis, 211 F.3d 1340,1343 (11th Cir. 2000).

[13] United States v. Scott, 426 F.3d 1324, 1329 (11th Cir.2005).


the offense and provided both specific and general deterrence; (3) he played a small role in a large conspiracy; (4) he received a significantly higher sentence than his co-defendants based solely on the fact that he was the captain of the vessel; and (5) his base offense level was the same base offense level as that of a kingpin of a large-scale organization, even though he had no equity or ownership interest in the drugs, was not earning a commission from the sale of the drugs, and did not have a leadership position in the larger drug organization.[14] These factors were considered, but they did not outweigh the fact that De Armas was the captain of the boat and was therefore not less culpable than the other participants.

As to Petitioner's request for relief on his claim that he is entitled to a downward departure as an "alien of Deportable Status." That factor does not compel a sentencing court to depart downward. Normally, one's immigration status will not support a departure.[15]

## CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that:

1.      The Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. §2255 (Dkt. #1) is **DENIED.**

2.      The Clerk shall enter judgment for Respondent, United States of America, terminate all pending motions, and close this case.

---

[14]United States v. De Armas, 180 Fed.Appx. 70, 2006 WL 1217871 (C.A.11 (Fla.))

[15]U.S. v. Lahoud 178 Fed.Appx. 926, 2006 WL 1130807 (C.A.11 (Fla. (C.A.11 (Fla.),2006).

      3.      The Clerk is directed to terminate the Motion to Vacate, Set Aside or Correct Sentence (Dkt. #167) in the underlying criminal case number 8:04-CR-562-T-30MAP.

**DONE** and **ORDERED** in Tampa, Florida on October 17, 2007.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

S:\Even\2007\07-cv-694.deny 2255.wpd